Filed 8/7/26  P. v. Lopez CA6

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>GERARDO LOPEZ,<br><br>    Defendant and Appellant. | H053105<br>(Santa Clara County<br> Super. Ct. No. CC617449) |

Defendant and appellant Gerardo Lopez appeals the denial of a motion to vacate his 2008 conviction and to allow him to withdraw his no contest plea under Penal Code sections 1016.5 and 1473.7.  Lopez argues that he was not advised of the immigration consequences of his plea and did not meaningfully understand those consequences.  Having reviewed the record, we conclude that there was sufficient evidence to support the trial court's finding that Lopez was properly advised of the consequences of his plea.  In addition, the evidence did not support Lopez's claim that he lacked a meaningful understanding of those consequences; indeed, he admitted to understanding that removal from the United States was one such consequence.  We affirm.

## I.  BACKGROUND

### A.  *The Charges Against Lopez and his Plea*

In January 2008, the Santa Clara County District Attorney's office filed an information charging Lopez with six criminal counts: (1) assault with a deadly weapon

(Pen. Code, § 245, subd. (a)(1)); (2) hit and run driving causing property damage (Veh. Code, § 20002, subd. (a)); (3) inflicting corporal injury on a spouse, cohabitant, former spouse, or former cohabitant (Pen. Code, § 273.5, subd. (a)); (4) battery (Pen. Code, §§ 242, 243, subd. (a)); (5) driving while unlicensed (Veh. Code, § 12500, subd. (a)); and (6) vandalism – less than four hundred dollars (Pen. Code, § 594, subds. (a), (b)(2)(A)).

On February 13, 2008, Lopez pleaded no contest to counts 1, 2, 3, and 5.[1] On the minute order for that plea hearing, the boxes for "Adv" and "Immig" were checked by the court. Before sentencing, on March 18, 2008, Lopez was detained on an immigration hold. At the sentencing hearing on April 11, 2008, the trial court placed Lopez on three years of probation, with 360 days in the county jail as a condition of probation, deemed served.

**B.      *The Motion to Vacate***

More than 16 years later, on August 29, 2024, Lopez moved to vacate his conviction and withdraw his plea pursuant to Penal Code sections 1016.5 and 1473.7.[2] He asserted that he "did not 'meaningfully understand' the immigration consequences of his guilty plea." In his sworn declaration, Lopez acknowledged that "[m]any years have passed and I do not remember all the details of what happen[ed] in Court, but I do remember not being told I could get deported, denied naturalization, exclu[ded] from the United States, or not be able to receive a green card." He claimed to "remember that neither my attorney nor the judge advised me of [the] immigration consequences" of his plea, and that he "did not talk about immigration consequences" with his attorney. After stating that he did not remember "all the details" of the court hearing, he later stated in

---

[1] Count 1 was amended to a charge of assault by means of force likely to cause great bodily injury.

[2] All further statutory references are to the Penal Code unless otherwise indicated.

the same declaration, "I do not remember much of the details in court. But I am sure I was not told of any [i]mmigration consequences."

Lopez pointed out that his attorney in the 2008 case did not speak Spanish, but he acknowledged that there was a Spanish interpreter at the court hearings. He asserted: "Had I known that my plea of guilty would result in future immigration consequences of deportation, exclusion of admission into the United States, denial of naturalization, or risk never receiving legal permanent resident status, I would have fought the case and I would have also consulted with an immigration attorney to discuss different options for resolution."

The trial court held an evidentiary hearing on Lopez's motion on February 13, 2025. The reporter's transcripts from 2008 and the change of plea form signed by Lopez were no longer available. The following individuals testified at the hearing: (1) Lopez's attorney in the 2008 case, Thompson Sharkey; (2) the prosecutor in the 2008 case, Max Zarzana; (3) a defense expert witness, Peter Singh; and (4) Lopez himself.

Sharkey testified that he did not have the file from the 2008 case and had no independent recollection of the matter. He stated, however, that in 2008 he had a standard admonition that he gave to his clients in "[e]very felony case where the person was pleading." The specific immigration advisement he gave in 2008 was: "If you are not a citizen of the United States, conviction can result in deportation, denial of naturalization, or refusal of admittance into the country."

Zarzana also testified that he had no independent recollection of Lopez's case. Nevertheless, he stated: "If I was taking a felony change of plea, I would fill out a felony change of plea checklist 100 percent of the time." On Zarzana's felony voir dire checklist for Lopez's case, the words "deportation, exclusion, denial of naturalization if not U.S. citizen" were checked. Zarzana testified he would be "checking things off" while the judge gave the advisements.

3

Singh, an immigration attorney of more than 25 years, testified as to the immigration consequences of Lopez's plea. He noted that having a spouse and children in the United States would not help prevent removal. Singh stated further that a person who is removed from the United States as a result of a conviction for an aggravated felony (such as an assault under Penal Code section 245, subdivision (a)(1)) would be removed for the rest of the person's life.

The court also received into evidence an April 2008 probation report describing a March 13, 2008 interview with Lopez in which he talked about his future goals. The report states: "As to [Lopez's] future goals, he indicated he will be deported. '*So that is that, I can't do anything*.' However, if he is not deported, he will comply with the terms and conditions of probation and pay restitution to the victims." (Italics added.) At the February 13, 2025 hearing, Lopez testified that he did not remember ever speaking with a probation officer in 2008; at the same time, he denied that he ever stated that he "will be deported."

The trial court issued its decision denying Lopez's motion on March 6, 2025, finding that Lopez had not met his burden of proof. The court found that the testimony of Sharkey and Zarzana regarding their regular practices as to immigration advisements was corroborated by the court's February 13, 2008 minute order, on which the immigration advisement boxes ("Adv" and "Immig") had been checked. In addition, the court observed that the probation report confirmed that Lopez knew of at least one of the most severe potential immigration consequences. The court found that Lopez's testimony that he had never spoken to a probation officer as part of his presentence interview was "not true, and I found his testimony on that point unreliable."

Lopez timely appealed.

4

## II. DISCUSSION

### A. *Governing Law and Standard of Review*

Section 1473.7 provides that "[a] person who is no longer in criminal custody may file a motion to vacate a conviction or sentence [because] [¶] … [t]he conviction or sentence is legally invalid due to prejudicial error damaging the moving party's ability to meaningfully understand, defend against, or knowingly accept the actual or potential adverse immigration consequences of a conviction or sentence." (*Id.*, subd. (a)(1).) "To establish prejudicial error, a defendant must demonstrate a 'reasonable probability that the defendant would have rejected the plea if the defendant had correctly understood its actual or potential immigration consequences' [citation] and must corroborate any assertions with ' " 'objective evidence' " ' [citation]." (*People v. Espinoza* (2023) 14 Cal.5th 311, 316.)

"We apply independent review to the denial of a section 1473.7 motion. [Citation.] Under this standard, we defer to any 'factual findings based on the trial court's personal observations of witnesses,' but otherwise ' "exercise[] [our] independent judgment to determine whether the facts satisfy the rule of law." ' [Citation.]" (*People v. Padron* (2025) 109 Cal.App.5th 950, 959; *People v. Vivar* (2021) 11 Cal.5th 510, 524 (*Vivar*).)

"To prevail on a motion brought pursuant to Penal Code section 1016.5, a defendant must establish: (1) he or she was not properly advised of the immigration consequences as provided by the statute; (2) there exists, at the time of the motion, more than a remote possibility that the conviction will have one or more of the specified adverse immigration consequences; and (3) he or she was prejudiced by the nonadvisement, i.e., if properly advised, he or she would not have pleaded guilty or nolo contendere." (*People v. Dubon* (2001) 90 Cal.App.4th 944, 951–952 (*Dubon*).) The language of the advisement given need not be exact, but only in substantial compliance

5

with the requirements of section 1016.5.  (*People v. Superior Court (Zamudio)* (2000) 23 Cal.4th 183, 207–208 (*Zamudio*).)[3]

We review denial of a section 1016.5 motion for abuse of discretion.  (*Zamudio*, *supra*, 23 Cal.4th at p. 192.)  Under this standard, we will reverse if the trial court exercised its discretion "in an arbitrary, capricious, or patently absurd manner that results in a manifest miscarriage of justice."  (*People v. Limon* (2009) 179 Cal.App.4th 1514, 1518.)  In examining the trial court's resolution of factual questions, we apply the substantial evidence rule, and " '[i]f the circumstances reasonably justify the trial court's findings, an appellate court cannot reverse merely because the circumstances might also be reasonably reconciled with a contrary finding.'  [Citations.]" (*People v. Quesada* (1991) 230 Cal.App.3d 525, 533.)  " 'Although "substantial" evidence is not synonymous with "any" evidence ... , the standard is easily satisfied.'  [Citation.]" (*People v. Barnwell* (2007) 41 Cal.4th 1038, 1052, fn. 11.)

### B.    Analysis

As noted above, this appeal focuses on whether the trial court gave Lopez the necessary advisement regarding the potential immigration consequences of a "no contest" or guilty plea under section 1016.5, and whether he meaningfully understood those consequences under section 1473.7.  We first address section 1016.5.

---

[3] Effective January 1, 2026, section 1016.5, subdivision (a) requires a "verbatim" recitation of the advisement, with subdivision (e) also providing as follows: "For a plea accepted prior to January 1, 2026, it is not the intent of the Legislature in amending this section that a court's failure to provide a verbatim advisement as described in subdivision (a) requires the vacation of judgment and withdrawal of the plea or otherwise constitutes grounds for finding a prior conviction invalid pursuant to subdivision (b)." Neither side has argued that this most recent amendment has any impact on the outcome of the present appeal.

## 1.     Penal Code Section 1016.5

Section 1016.5, subdivision (a) sets forth the specific advisement that a trial court must provide to a pleading defendant. "Absent a record that the court provided the advisement required by this section, the defendant shall be presumed not to have received the required advisement." (§ 1016.5, subd. (b).) "[T]he presumption of nonadvisement is rebuttable. [Citation.]" (*People v. Arriaga* (2014) 58 Cal.4th 950, 961 (*Arriaga*).) In this case, we no longer have either the reporter's transcript of the plea hearing or the plea form signed by Lopez, and so we will assume that the section 1016.5 presumption applies.[4]

The parties dispute whether the trial court properly applied the presumption, but "[i]n the absence of evidence to the contrary, we presume that the court 'knows and applies the correct statutory and case law.' [Citations.]" (*People v. Thomas* (2011) 52 Cal.4th 336, 361.) The critical question here is whether the prosecution presented sufficient evidence to rebut the presumption. We conclude that it did.

At the hearing on Lopez's motion to vacate, the trial court heard testimony from the original prosecutor, Zarzana, that he had a regular practice of filling out a "felony plea voir dire checklist" in every felony case, and that he in fact filled one out in this case. On the checklist for Lopez, he "marked 'deportation, exclusion, denial of naturalization if not U.S. citizen,' " which indicates that the trial judge in 2008 gave the necessary advisement, as Zarzana "was checking things off as we went along." The trial court in 2025 also had before it the minute order from February 2008 showing the immigration advisement boxes checked. The trial court appropriately found that the

---

[4] In *Arriaga*, discussed further below, the California Supreme Court discussed whether a minute order could qualify as a sufficient "record" under section 1016.5, subdivision (b), obviating the application of any evidentiary presumption, as well as whether a minute order could be used to rebut the presumption. (*Arriaga*, 58 Cal.4th at pp. 961–964.)

7

minute order corroborated Zarzana's testimony. Zarzana's testimony, coupled with the February 2008 minute order, was sufficient evidence to overcome the presumption under section 1016.5.

In *Arriaga*, the Supreme Court held that the required showing under section 1016.5 did not require clear and convincing evidence—only a preponderance (*Arriaga*, *supra*, 58 Cal.4th at p. 955)—and the following evidence was deemed sufficient to rebut the section 1016.5 presumption: (1) a minute order stating: " 'Defendant advised of possible effects of plea on any alien or citizenship/probation or parole status' "; and (2) testimony of the prosecutor from the defendant's plea hearing, who declared that he always gave the following advisement: " 'There are a number of consequences to your plea. One of those consequences is you may be deported from the country, that is, required to leave the country, after you are convicted of this offense. You may be denied readmission to the United States after you enter your plea. And if you apply for citizenship, that application may be denied.' " (*Arriaga*, *supra*, at p. 956.) The Supreme Court noted that "[t]here will be circumstances, not present here, under which the trial court may properly conclude that the prosecution has not rebutted the nonadvisement presumption. For instance, both the original prosecutor and the trial judge may be unavailable to testify; their testimony about what occurred at the plea hearing may prove less persuasive than the defendant's testimony; or the minute order for the plea hearing, by the absence of any notation that the defendant was advised, may strongly support an inference that advisements were *not* given [citation]." (*Id*., at p. 963.)

The foregoing circumstances were not present in *Arriaga*, and we likewise conclude that they are not present in this case. Although there was no testimony from the trial judge who took Lopez's plea in 2008, there was testimony from the prosecutor, coupled with the minute order. While a minute order may not contain enough detail in all circumstances to qualify as a written "record" under section 1016.5, it can still provide "significant evidence rebutting the statutory presumption." (*Dubon*, *supra*,

8

90 Cal.App.4th at p. 955.)  As in *Arriaga*, Zarzana's testimony and the minute order here were sufficient for the 2025 trial court to conclude that Lopez received the proper immigration advisements in 2008.[5]

Lopez argues that the law has changed since *Arriaga*, and he highlights sections 1016.2 and 1016.3, enacted approximately a year later, as well as amendments to section 1473.7.  Section 1016.2 was enacted to codify *Padilla v. Kentucky* (2010) 559 U.S. 356, in which the United States Supreme Court emphasized the importance of defense counsel informing their noncitizen clients of the risk of removal during the plea bargaining process.  The statute provides that "defense counsel must investigate and advise regarding the immigration consequences of the available dispositions, and should, when consistent with the goals of and informed consent of the defendant, and as consistent with professional standards, defend against adverse immigration consequences."  (§ 1016.2, subd. (a).)  Section 1016.3 goes on to provide that defense counsel "shall provide accurate and affirmative advice about the immigration consequences of a proposed disposition, and … defend against those consequences." (*Id*., subd. (a).)  At the same time, section 1016.3 also states that "[t]his code section shall not be interpreted to change the requirements of Section 1016.5."  (*Id*., subd. (c).)  While we are cognizant of the importance of advising a client regarding the immigration consequences of a plea, sections 1016.2 and 1016.3 do not affect our conclusion that the evidence in this case supports the trial court's finding that Lopez did receive the immigration advisement required by section 1016.5.

---

[5] Section 1016.5, subdivision (a) refers to an advisement given by "the court," whereas in *Arriaga*, the prosecutor from the original plea hearing testified that he himself always "advise[d] defendants of the immigration consequences of pleading guilty or no contest, as required by section 1016.5."  (*Arriaga*, *supra*, 58 Cal.4th at pp. 963–964.)

**2.      Penal Code Section 1473.7**

In addition to arguing that he did not receive the section 1016.5 advisement, Lopez argues that he did not meaningfully understand the immigration consequences of his plea under section 1473.7.  (See § 1473.7, subd. (a)(1).)  "[T]he focus of the inquiry in a section 1473.7 motion is on the '*defendant's own error* in … not knowing that his plea would subject him to mandatory deportation and permanent exclusion from the United States.'  [Citation.]" (*People v. Mejia* (2019) 36 Cal.App.5th 859, 871.)  And yet "[a] defendant's assertion as to his or her state of mind is not accepted at face value by courts evaluating a section 1473.7 motion.  Such assertions must be corroborated with objective evidence.  [Citations.]" (*People v. Carrillo* (2024) 101 Cal.App.5th 1, 17.)

Lopez argues that he "did not understand everything because things were happening very fast and he was very nervous."  As noted above, he testified that he was "sure no one told [him] anything" about "deportation, exclusion from admission into the United States, or denial of naturalization."  According to him, if anyone had properly advised him of these consequences, it would have made a strong impression on him because he had a baby on the way, and he would have consulted an immigration attorney.  Lopez further notes that at the time of the hearing in 2008, his English was still not very good.

Lopez's contentions are belied by the probation report, which described him as being resigned to the fact that he "will" be "deported": " '*So that is that, I can't do anything.*' "  (Italics added.)  This statement to the probation officer was directly inconsistent with the notion that Lopez would have been highly motivated to consult with an immigration attorney had he known about the adverse consequences.  Similarly, the trial court reasonably concluded that Lopez's claim that he "never saw anyone from probation" strained credulity, given the existence of a probation report upon which the trial court would necessarily have relied at sentencing in 2008.  In light of the

10

inconsistencies between Lopez's assertions and the contents of the probation report, the trial court in this case appropriately found Lopez's testimony to be "not true" and "unreliable." Because we evaluate the court's ruling in a section 1473.7 proceeding under independent review, we "give particular deference to factual findings based on the trial court's personal observations of witnesses." (*Vivar*, *supra*, 11 Cal.5th at pp. 527–528.)

On appeal, Lopez professes to find significance in the fact that the probation report was prepared after he had already pled to the charges, but he fails to identify any case event at which he would have learned about the possibility of removal before his March 13, 2008 interview with probation, other than the February 13, 2008 plea hearing itself. Moreover, Lopez never moved to withdraw his plea before the sentencing hearing in April 2008, further belying his claim that he would have acted differently if he had been fully advised.

Lopez claims that the generic advisement that a conviction may have immigration consequences is not sufficient and that "[u]nder current law, a criminal defendant must be alerted to three distinct dangers: (1) the certainty of removal; (2) the certainty of denial of readmission; and (3) the lifetime exclusion from naturalization." But the trial court did in fact have evidence before it to support a finding that Lopez had been informed of all three consequences. As mentioned above, the prosecutor's felony voir dire checklist for the 2008 case showed that the words "deportation, exclusion, denial of naturalization if not U.S. citizen" were checked.

In short, the record on appeal supports a conclusion that Lopez was properly advised of the immigration consequences of his plea under section 1016.5, and he has failed to establish with any corroborating evidence that he did not meaningfully understand those consequences under section 1473.7. Accordingly, we find no error in the trial court's denial of his motion to vacate his conviction. Additionally, in light of this conclusion, we do not need to reach the separate question of prejudice—i.e., whether

11

the court's alleged failure to advise Lopez or his alleged failure to understand caused him to accept a plea deal that he would otherwise have rejected.

### III.  DISPOSITION

The trial court's March 6, 2025 order denying the motion to vacate the conviction is affirmed.

_____

                         CHUNG, J.*

WE CONCUR:

_____

GREENWOOD, P. J.

_____

WILSON, J.

*People v. Lopez*
H053105

_____

     * Judge of the Santa Clara County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.